UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN VANDERKOLK,

        Plaintiff,

v.                                  Case No. 1:05-CV-741
                                    Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on September 26, 1958 and graduated from high school (AR 58, 89, 232).[1] Plaintiff alleges that he became disabled on January 1, 2002 (AR 58). He had previous employment as a heavy equipment operator and construction foreman (AR 92-94). Plaintiff identified his disabling condition as a back injury (AR 83). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 5, 2005 (AR 15-25). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (AR 23). Second, the ALJ found that he suffered from the severe impairments

of degenerative disc disease, depression, gout and osteoarthritis (AR 24). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 24). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to:

> lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for six of eight hours in a day, and sit for two hours with the option to sit or stand every thirty minutes. The claimant may occasionally climb stairs or ramps; kneel, stoop, crawl, grasp or crouch. The claimant may not climb ladders, ropes or scaffolds.

(AR 24). The ALJ concluded that plaintiff was unable to perform his past relevant work (AR 24). The ALJ also found that plaintiff's allegations regarding his limitations are not totally credible (AR 24).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 24). The ALJ found that there are a significant number of jobs in the national economy that plaintiff can perform (AR 24). The ALJ cited the vocational expert's testimony that an individual with plaintiff's restrictions could perform the following jobs in Michigan: bench work assembler (15,000 jobs); cashier (6,000 jobs); or packager (5,000 jobs) (AR 23). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 24-25).

### III. ANALYSIS

Plaintiff raises five issues on appeal:

**A.   The ALJ wrongfully failed to give the opinion of Dr. DeMoss the treating doctor controlling weight and failed to provide good reasons for the weight given to his opinion.**

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great

4

weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

In February 2004, Jeff DeMoss, D.O., completed a "medical assessment of ability to perform work-related activities" form (AR 169-72). Dr. DeMoss indicated that since September 2000, plaintiff could sit, stand and walk for one hour each without interruption (AR 169). The doctor indicated that plaintiff could work in the following positions during an 8-hour workday: sit (one hour); stand (one hour); walk (one hour); and sit/stand as needed (2 hours) (AR 169). Plaintiff could

frequently lift five pounds, occasionally lift up to 20 pounds, and never lift 25 pounds or more (AR 169). Plaintiff could not perform grasping or manipulation with his left hand due to "joint swelling /destruction" (AR 170). Plaintiff could only use his right foot for tasks (AR 170). In addition, could never bend, twist, squat, kneel, climb stairs, climb ladders, crouch, crawl, or stoop (AR 170). Dr. DeMoss re-affirmed these restrictions in a sworn statement made on May 7, 2004 (AR 180-95). The doctor testified that plaintiff has osteoarthritis and gout, but admitted that he performed no testing such as x-rays or MRIs (AR 182, 187).

The ALJ considered Dr. Demoss' opinions expressed in February and May 2004, but concluded that they did not control because of discrepancies contained in the doctor's progress notes and the opinions:

> Treatment notes from Dr. DeMoss from June 20, 2003 to February 5, 2004 contain no references to the limitations detailed by Dr. DeMoss in Exhibits 7F [AR 169-72], and 9F [AR 180-95] his sworn statement. Treatment notes do not indicate objective findings of limited range of motion due to osteoarthritis and gout at each visit. The claimant was given prescription medication for pain. Dr. DeMoss gave no referrals to a pain management clinic or physical therapist to the claimant. The doctor did return the claimant to work and a permission slip of March 21, 2003 indicates only that the claimant has recurrent, intermittent gout, and the episodes cause the claimant to miss work at times (Exhibit 38, p. 10) [AR 148]. No other objective findings are included in the treatment notes.

(AR 19).

The ALJ has stated good reasons for discounting Dr. DeMoss' opinions. In this regard, the court notes that the doctor's issuance of a "Permission to Return to Work or School" slip in March 2003 is inconsistent with both the medical assessment and the doctor's sworn statement that plaintiff has suffered from severe work-preclusive limitations since September 2000. Furthermore, the ALJ observed that there is a gap in the medical record from May 10, 2001 until plaintiff saw Dr. DeMoss on January 13, 2003 (AR 17). Plaintiff's lack of medical treatment during this twenty-

6

month period undercuts Dr. DeMoss' opinion that plaintiff suffered these debilitating conditions from September 2000 through May 2004. Accordingly, substantial evidence supports the ALJ's decision not to give Dr. DeMoss' opinion controlling weight.

>  **B.  The ALJ improperly discounts the plaintiff's credibility because he relies on a mere conclusory statement as justification for his decision.**

Next, plaintiff contends that the ALJ used "mere boilerplate" rather than making a thorough assessment of his credibility. It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

The factors to be considered in evaluating symptoms under 20 C.F.R. § 1529 include: (i) the claimant's daily activities; (ii) the location, duration, frequency and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (v) treatment, other than medication, the claimant receives or received for relief of her pain or other symptoms; (vi) any measure the claimant uses or has used to relieve her pain or other symptoms;

and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).

The ALJ specifically referred to § 1529 in his decision (AR 17).  While the ALJ did not explicitly enumerate the seven factors set forth in § 1529, he addressed the factors in narrative form (AR 17-23).  The ALJ found it significant that plaintiff's alleged onset date of January 1, 2002 fell within a twenty-month gap in his medical treatment (from May 2001 through January 2003) (AR 17). The ALJ also found that Dr. DeMoss gave plaintiff permission to return to work in March 2003 (AR 19).  These findings contradict plaintiff's claim that he has been unable to work since January 1, 2002.  Accordingly, substantial evidence supports the ALJ's determination that plaintiff' allegations of his functional limitations are not totally credible.

### C. The ALJ failed to secure an exam by a rheumatologist that he ordered because he felt the record needed further development.

Plaintiff had two hearings in this matter.  At the first hearing, the ALJ determined that the medical record needed to be developed:

> Counsel, before I ask you if you have anything further byway of evidence or argument, I think it might make sense for me to indicate to you where I think the record needs some development.  The functional capacities evaluation by the Claimant's treating doctor seems to base the most crucial limitations in it on the joint pain.  Which the record – he talks about joint destruction.  The record does not contain any x-rays to establish that.  He talks about the possibility of inflammatory arthritis which his report basically concedes he's not treating him for, and indeed, the Claimant's testimony indicates no ongoing anti-inflammatory medication.  And that Dr. DeMoss is referring him to a rheumatologist.  For those reasons, I can't really grab onto your argument that – about Exhibit 7F being an exhibit that the regulations would give controlling weight, but what it does do is suggest we do have a gap here in the record.
>
> \*   \*   \*
>
> All right.  Well, then I'm am [sic] going to to ask that the state agency set up a consultative examination with a rheumatologist, with any appropriate x ray [sic] being taken, to see just how – you know, to get a better handle on many of these

> other limitations that are really not well-developed in the record. However, it appears to be in an area that he feels a need for further development of the evidence himself. And so we'll arrange for that. When it comes in, counsel, of course, you'll get a copy of it and have an opportunity to respond appropriately, even to the point of requesting an additional hearing. And you know, at that point, we'll see where the record takes me.

(AR 256-57).

The ALJ requested DDS assistance in obtaining a consultative examination by a rheumatologist (AR 178). The examination was performed by an internist, Bret Bielawski, D.O. (AR 173-77). Dr. Bielawski is a Diplomate of the American Board of Internal Medicine; however, he is not a rheumatologist (AR 176). Dr. Bielawski performed range of motion tests and reached conclusions regarding the limitations posed by plaintiff's low back pain and gout (AR 174-76). First, the doctor found that plaintiff's low back pain arose from a prior herniated disc (he underwent a laminectomy and diskectomy in February 2001) (AR 173-77). The doctor felt that plaintiff's back problem would impair him from squatting down repeatedly to pick up objects, walk long distances or climb stairs (AR 176). Second, the doctor found that plaintiff had a decreased range of motion in his left hand and left knee due to gout (AR 174-76). While Dr. Bielawski found that plaintiff suffered from some decreased range of motion due to low back pain and gout, he did not perform any x-rays and did not reach any conclusions with respect to his osteoarthritis (AR 173-76).

Plaintiff's counsel objected because the consultative examination was not performed by a rheumatologist (AR 118-19). At the second hearing, the ALJ noted that plaintiff was not examined by a rheumatologist (AR 262-63). The ALJ did not address this discrepancy in his decision, stating that that "Dr. Bert Bielawski, D.O., a Diplomate of the American Board of Internal medicine at the request of the undersigned also performed a consultative examination" (AR 19). The ALJ's statement is not supported by the record. As the court previously discussed, the ALJ did

9

not request an examination by Dr. Bielawski; rather, he specifically requested a rheumatologist (AR 178).

The court concludes that the ALJ did not adequately develop the medical record when he failed to obtain an examination by a rheumatologist and appropriate x-rays. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). Here, because the ALJ saw a need for a specialist's opinion and additional objective evidence, he was required to obtain an appropriate evaluation. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996) ("[a]n ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination" ). The ALJ held the record open to allow for the examination and additional tests, and then held a second administrative hearing (AR 257-58, 259-78).

The Commissioner "has broad latitude in ordering a consultative examination." *Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). However, if an ALJ finds that the services of a specialist are required, the ALJ fails to develop the record by utilizing the services of a generalist rather than a specialist. *See, e.g., Chavez v. Barnhart*, 298 F.Supp.2d 1207, 1211-13 (D.Kan.2004) (ALJ failed to properly develop the record when the medical expert recommended an examination by a specialist (a neuropsychologist), but the ALJ obtained an examination by a generalist (psychologist). Here, the ALJ advised plaintiff's counsel that he could not decide the case without a rheumatologist's examination and additional objective evidence such as x-rays (AR 257-58). Dr. Bielawski is a specialist in internal medicine. However, he is not a rheumatologist and did not accomplish the stated purpose of the consultative examination, i.e., an

10

evaluation of plaintiff's osteoarthritis and objective evidence of his alleged joint destruction. The ALJ offers no explanation for these deficiencies in the record.

Under these circumstances, the ALJ failed to develop the record. Accordingly, this case should be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g). On remand, the Commissioner should have plaintiff evaluated by a rheumatologist and obtain x-rays or other relevant medical tests necessary to determine the extent of his osteoarthritis and joint destruction as described by Dr. DeMoss.

### D.     The ALJ did not properly assess mental residual functional capacity.

Next, plaintiff contends that the ALJ failed to perform a function-by-function analysis of his mental impairment as required by the fourth paragraph of the stated "purpose" of SSR 96-8p. Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

As an initial matter, the court disagrees with plaintiff's contention that the fourth paragraph should be read in isolation. The entire stated "purpose" of SSR 96-8p is as follows:

> PURPOSE: To state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits under titles II and XVI of the Social Security Act (the Act). In particular, to emphasize that:
>
> 1. Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.
>
> 2. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural body build, and the activities the individual was accustomed to doing in his or her previous work.
>
> 3. When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.
>
> 4. <u>The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.</u>
>
> 5. RFC is not the least an individual can do despite his or her limitations or restrictions, but the most.
>
> 6. Medical impairments and symptoms, including pain, are not intrinsically exertional or nonexertional. It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional.

1996 WL 374184 at *1 (emphasis added).

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform

12

sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner of Social Sec.*, 30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted).

Here, the ALJ met the requirements for articulating the RFC determination as discussed in *Delgado*. The ALJ found that plaintiff had a severe impairment of depression (AR 24).[2] While plaintiff had a severe impairment of depression, this impairment was not disabling. The ALJ discussed at length his determination that plaintiff did not meet the requirements of Listing 12.04 for "affective disorders, major depressive disorder" (AR 20). The ALJ explained that although plaintiff met the "A" criteria of the Listing based on the diagnosis of depression by a licensed clinical psychologist (AR 20), he did not meet either the "B" or "C" criteria that are necessary to meet the requirements of the listing:

> Regarding the "B" criteria [of Listing 12.04], the undersigned based not only on the new pscychological evaluation [by Irwin Greenbaum, Ph. D.], but also on the longitudinal medical record, that the claimant has a slight limitation in activities of daily living based on claimant's testimony that he tends to his personal hygiene, but does not sweep, vacuum, or do laundry and only occasionally shops. There is a slight limitation in social functioning in view of the claimant's testimony that he does not visit others, belong to social organizations or attend church, but does occasionally go out to dinner. The claimant's admitted ability to watch television, drive a car [sic], suggests that he has at most moderate difficulty in maintaining concentration, persistence, and pace. Finally, the available evidence does not establish that the claimant has experienced extended episodes of decompensation during the time pertinent to this decision other than the single incident witnessed by the claimant's attorney.

\*   \*   \*

---

[2] A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ability to do basic work activities is defined in § 404.1521(b) as "the abilities and aptitudes necessary to do most jobs."

> The claimant's depression does not meet any of [the] C criteria. As noted above, there have not been repeated episodes of extended decompensation. His statements and testimony indicate sufficient adaptability to maintain extensive daily activities. He is able to function outside of his home.

(AR 20-21).

In addition, the ALJ observed that plaintiff's treating doctors did not find that he suffered from a depressive disorder (AR 21). For example, in February 2004, Dr. DeMoss found that depression was "not present" (AR 21, 162). The ALJ noted "the same dearth of clinical signs, symptoms and laboratory findings for depression were noted on December 18, 2003, and June 20, 2003 in Dr. DeMoss' progress notes" (AR 21, 165, 167-68). The ALJ noted that this absence of clinical signs of depression was in stark contrast to the consultative examination of Dr. Greenbaum, who determined that plaintiff was severely depressed in November 2004, having a GAF score of 42, with the highest GAF score in the last twelve months being 45 (AR 21).[3] These GAF scores lie within the 41 to 50 range, which would indicate "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34. As the ALJ pointed out, the medical record does not indicate these types of severe symptoms in 2003 and 2004.

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

Accordingly, the ALJ did not commit error in determining plaintiff's mental RFC.

### E.  New and material evidence exists that warrants a remand.

Finally, plaintiff seeks a remand based on new evidence, which consists of Dr. DeMoss' treatment notes from April 6, 2005.  *See* attachment to plaintiff's brief.  These notes state that plaintiff reported as follows: "change in sleep pattern, depression and inability to concentrate." *Id*.  Dr. DeMoss diagnosed plaintiff with "major depression" and prescribed Fluoxetine Hcl.  *Id*.

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g).  *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).[4]  In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the evidence might have changed the prior proceeding.

The standard in determining whether to remand a claim for the consideration of new evidence is governed by statute.  "The court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g)(emphasis added).  "Good cause" is shown for a sentence-six

---

[4] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand).  *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

It appears that the April 6, 2005 treatment notes arose from plaintiff's continued medical treatment. Under these circumstances, plaintiff has established good cause for failing to incorporate these treatment notes into the administrative record. Plaintiff has also met the criteria for materiality. Dr. Greenbaum's examination indicated that plaintiff suffered from major depression in November 2004 (AR 220). Dr. DeMoss' recent treatment notes suggest that plaintiff suffered from the gradual onset of depression commencing in approximately November 2004 and that the doctor prescribed medication in April 2005. This new evidence tends to support Dr. Greenbaum's conclusion that plaintiff was severely depressed. Under these circumstances, there is a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with this new evidence. Accordingly, plaintiff is entitled to a remand for consideration of this post-hearing evidence on his mental condition.

**IV.     Recommendation**

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentences four and six of 42 U.S.C. 405(g). On remand, the Commissioner should have plaintiff evaluated by a rheumatologist and obtain x-rays or other relevant medical tests necessary to determine the extent of his osteoarthritis and joint destruction as described by Dr.

DeMoss.  The Commissioner should also consider Dr. Demoss' April 6, 2005 treatment notes with respect to plaintiff's depression claim.


Dated:  December 19, 2006            /s/ Hugh W. Brenneman, Jr.
                                     Hugh W. Brenneman, Jr.
                                     United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).